Jeffrey C. Bogert, Esq. (SBN132778
bogertlaw@outlook.com
**MCDONALD WORLEY**
827 Moraga Drive
Los Angeles, CA 90049
Telephone: (424) 293-2272

Charles Lew, Esq. (SBN 227495)
charles@thelewfirm.com
Isaiah Artest, Esq. (SBN 320326)
isaiah@thelewfirm.com
**THE LEW FIRM, APC**
433 North Camden Drive, Suite 600
Beverly Hills, California 90210
Telephone: (310) 279 – 5145
Facsimile: (310) 300-1819

Attorneys for Plaintiffs,
B.J.M.V. INC., d/b/a SPC BUILDING SERVICES; BENJAMIN J. RODRIGUEZ; and
BENJAMIN V. RODRIGUEZ

## UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

## EASTERN DIVISION IN RIVERSIDE

| | |
|---|---|
| B.J.M.V. INC., a California Corporation, d/b/a SPC BUILDING SERVICES; BENJAMIN V. RODRIGUEZ, an individual; and BENJAMIN J. RODRIGUEZ, an individual, <br><br> Plaintiffs, <br><br> v. <br><br> VAIL ENERGY DEVELOPMENT INC., a Colorado Corporation; PLAZA FIESTA DENVER LLC, a Colorado Limited Liability Company; PLAZA FIESTA COLORADO LLC, a Delaware Limited Liability Company; EL PASEO COLORADO LLC, aka LA PLAZA COLORADO, L.L.C., a Colorado | **CASE NO.: 5:20-cv-1670** <br><br> **PLAINTIFFS' VERIFIED COMPLAINT FOR DAMAGES** <br><br> 1. NEGLIGENCE <br> 2. CONCEALMENT <br> 3. BREACH OF THE IMPLIED COVENANT OF GOOD FAITH AND FAIR DEALING <br> 4. UNFAIR BUSINESS PRACTICES [BUSINESS AND PROFESSIONS CODE § 17200, *et seq.*] <br> 5. BREACH OF CONTRACT <br> 6. INTENTIONAL MISREPRESENTATION <br> 7. NEGLIGENT MISREPRESENTATION |

1

Limited Liability Company; CAPITAL CITY DEVELOPMENT, L.L.C., a Colorado Limited Liability Company; VAIL TRANSPORTATION SERVICES, LLC, a Colorado Limited Liability Company; LA POPULAR I, L.L.C., a Colorado Limited Liability Company; ROBERT DOUGLAS MCMURRAIN, an individual; and DOES 1 through 20, inclusive,

Defendants.

8. UNJUST ENRICHMENT
9. RELIANCE
10. FALSE PROMISE
11. *QUANTUM MERIT*

**DEMAND FOR JURY TRIAL**

Plaintiffs B.J.M.V. I.N.C. d/b/a SPC BUILDING SERVICES, BENJAMIN J. RODRIGUEZ, and BENJAMIN V. RODRIGUEZ, (collectively, "PLAINTIFFS"), hereby complains and alleges as follows against Defendants, Plaza Fiesta Denver LLC., Plaza Fiesta Colorado LLC., El Paseo Colorado LLC., aka La Plaza Colorado, L.L.C., Capital City Development L.L.C., Vail Transportation Services, LLC and Robert Douglas McMurrain.

## INTRODUCTION

1.      PLAINTIFF B.J.M.V. INC., a California corporation, is a corporation organized under the laws of the State of California. At all material times herein, PLAINTIFF B.J.M.V. INC. has been doing business as SPC BUILDING SERVICES ("S.P.C."), with its principal place of business located at 12118 Severn Way, Riverside, California 92503.

2.      PLAINTIFF BENJAMIN J. RODRIGUEZ (hereinafter RODRIGUEZ SR.") is and at all times herein mentioned was, over eighteen years old and a resident of the County of Riverside, in the State of California. At all times relevant, Plaintiff RODRIGUEZ SR. has been SPC's Founder and President.

3.      PLAINTIFF BENJAMIN V. RODRIGUEZ (hereinafter "RODRIGUEZ JR."), is and at all times mentioned here, was over eighteen years old and is currently a resident of the

2

County of San Diego, in the State of California.  At all times, Plaintiff RODRIGUEZ JR. was SPC's Executive Vice President until April 2014.

4.       B.J.M.V. d/b/a as SPC BUILDING SERVICES, BENJAMIN J. RODRIGUEZ, and BENJAMIN V. RODRIGUEZ, from time to time, may be collectively referred to as "PLAINTIFFS."

5.       Defendant Vail Energy Development L.L.C. (hereinafter "Defendant Vail") is a Colorable Limited Liability Company, with its principal place of business located in 1601 Red Canyon Estates Road, Edwards, Colorado 81632. Defendant Vail's status within the State of Colorado has been classified as "delinquent" since October 1, 2015.

6.       Defendant Plaza Fiesta Denver L.L.C. (hereinafter "Defendant P.F.D.") is a Colorado Limited Liability Company, with its principal place of business located in 1601 Red Canyon Estates Road, Edwards, Colorado 81632.  Defendant P.F.D. status within the State of Colorado is classified as "delinquent" since June 1, 2015.

7.       Defendant Plaza Fiesta Colorado L.L.C. (hereinafter "Defendant P.F.C.") is a Delaware Limited Liability Company, with its principal place of business located in 1601 Red Canyon Estates Road, Edwards, Colorado 81632.

8.       Defendant El Paseo Colorado L.L.C. (hereinafter "Defendant E.P.C.") is a Colorado Limited Liability Company, with its principal place of business located in 1601 Red Canyon Estates Road, Edwards, Colorado 81632.  El Paseo Colorado L.L.C. changed its name to La Plaza Colorado, L.L.C. (hereinafter "Defendant L.P.C.") effective June 26, 2019, with its principal place of business now located at 15200 E. Colfax Avenue, Aurora, CO 80011.

**COMPLAINT FOR DAMAGES**

9.      Defendant Capital City Development L.L.C. (hereinafter "Defendant C.C.D.") is a Colorado Limited Liability Company, with its principal place of business located at 15200 E. Colfax Avenue, Aurora, Colorado 90011.

10.     Defendant La Popular I, L.L.C. (hereinafter "Defendant L.P.") is a Colorado Limited Liability Company, with its principal place of business located in 10012 Commons Street, Suite 100, Lone Tree, Colorado 80124.

11.     Defendant Vail Transportation Services, LLC., (hereinafter "Defendant V.T.S.") is a Colorado Limited Liability Company, with its principal place of business located in 1601 Red Canyon Estates Road, Edwards, Colorado 81632.  Defendant V.T.S.'s status within the State of Colorado is classified as "delinquent" since April 1, 2018.

12.     Defendant Robert Douglas McMurrain, (hereinafter "Defendant McMurrain"), is an individual residing in Edwards, Colorado.  Plaintiffs believe, and therefore alleges, that Defendant McMurrain is doing business in Colorado. At all times relevant, Defendant McMurrain is the registered agent for Defendant P.F.C., Defendant L.P.C., and Defendant C.C.D.

13.     From time to time in this Complaint, Plaza Fiesta Denver L.L.C., Plaza Fiesta Colorado L.L.C., El Paseo Colorado L.L.C. aka La Plaza Colorado, L.L.C., Capital City Development L.L.C., La Popular I, L.L.C., Vail Transportation Services, LLC., and Robert Douglas McMurrain, from time to time, be collectively referred to as "Defendants."

14.     PLAINTIFFS are ignorant of the true names and capacities of the defendants sued herein as DOES 1 through 20 and therefore sues these defendants by such fictitious names. PLAINTIFFS will amend this Complaint to allege the true names and capacity when they are ascertained.

**COMPLAINT FOR DAMAGES**

15.     Each Defendant, both named and fictitious, at all times, a principal, agent, partner, alter ego and/or in some other capacity, however, termed or described, of each of the other Defendant or is, in some manner, legally liable for the conduct and damages at issue in this Action.

16.     Each Defendant, both named and fictitious, at all times, acting within the course and scope of one or more of such relationship and with the express or implied knowledge, direction, approval, and/or ratification of each of the other Defendants, and therefore jointly and severally liable for the claims asserted herein.

## JURISDICTION AND VENUE

17.     This Court has jurisdiction over the subject matter over the Plaintiffs' claims pursuant to 28 U.S.C. § 1332.  Plaintiffs are one corporation and two (2) individuals.  The corporation is incorporated in and maintains its principal place of business in California. The two (2) individuals are all citizens of California.  Defendants are eight (8) corporations and one (1) individual.  Seven corporations are incorporated in, and maintains its principal place of business, in Colorado.  The eighth corporation is incorporated in Delaware and maintains its principal place of business in Colorado. The individual is a citizen of Colorado.

18.     The amount in controversy exceeds **$75,000.00.**

19.     This Court also has personal jurisdiction over Defendants because Defendants, on information and belief, conducts business in the State of California and within this district, including contracts with California corporations and seeking financial investors through meetings with California residents.

20.     The venue is appropriate because a substantial part of the events happened in this district.  Additionally, a significant portion of Defendants' actions took place in this district,

5

including entering into contracts with Plaintiffs, breaching of duties under the terms of the agreements, and obtaining financial loans and investors within this district.

21.     Because this lawsuit arose in Riverside County, the matter should be assigned to the Eastern Division of this Court.

## FACTUAL BACKGROUND

22.     RODRIGUEZ SR operates SPC Building Services, a construction firm that specializes in maintenance, restoration, and commercial waterproofing buildings.  RODRIGUEZ JR was a Sales/Marketing Consultant for SPC Building Services, until April 2014.

23.     Defendant McMurrain operates a development company, Capital City Development, L.L.C.  However, without cash flow, Defendant McMurrain was looking for financial support or a partner to proceed with his business projects in Denver.  On or around February 2012, RODRIGUEZ JR was introduced to Defendant McMurrain as a potential capital source that could help bring in equity investors to the Project.  Defendant McMurrain presented an opportunity to RODRIGUEZ JR, where both parties could enter into a partnership that would benefit both parties. RODRIGUEZ JR would assist with the financing of the endeavor and would also serve in a strategic advising position as it related to not only the development and curation of the property but, in addition, RODRIGUEZ JR would assist in the leasing and populating of the Project. In addition, it was discussed that SPC Services would agree to the extent feasible to be the construction firm for the Project.

24.     RODRIGUEZ JR and Defendant McMurrain entered into a partnership for the development and operation of "Vail Energy Development," "Plaza Fiesta Denver," "Plaza Fiesta Colorado," and "El Paseo Colorado" (hereinafter "Businesses").  Although there was no formal long-form contractual written agreement, there was a copious amount of communication, including

**COMPLAINT FOR DAMAGES**

emails, texts, phone conversation, meetings witnessed by multiple parties, and written notes, including city and state business filings, which demonstrated the parties intent to engage in a contractual relationship.

25.     RODRIGUEZ JR understood that as a partner, his contribution included his time and efforts.  This continued for three (3) years, including RODRIGUEZ JR moving to Denver, Colorado, in April 2014 for the launch of Plaza Fiesta Denver.

26.     RODRIGUEZ JR presented to SPC and RODRIGUEZ SR, the ability to invest, loan, or partner with Defendant McMurrain and the Project, which anticipated SPC being the construction firm for the Project.

27.     Additionally, Defendant McMurrain, on multiple occasions, and during various meetings with potential equity investors, stated that SPC or "Ben's Father's Company" would be the General Contractor of Record."

28.     Furthermore, as a selling standpoint, Defendant McMurrain would emphasize the fact that RODRIGUEZ SR was "originally from Mexico and has been a General Contractor in California for over 40 years…" to show his desire to incorporate the Hispanic factor in all aspects of the project to potential investors, media vendors, community non-profit organizations and other community partners.

29.     RODRIGUEZ JR had an extensive working history with Defendant McMurrain dating back to 2012 when RODRIGUEZ JR would accompany Defendant McMurrain in the capacity of a consultant on various business trips to best secure investors, developers and strategic partners in the Hispanic and Project Finance community.

**COMPLAINT FOR DAMAGES**

30.     As Defendant McMurrain's business partner, RODRIGUEZ JR, met with representatives of the Washington State Investment Board (W.S.I.B.) on various occasions to discuss their investment in a planned new entity from June 2014 through August 2015.

31.     On or around June 2014, RODRIGUEZ JR accompanied Defendant McMurrain to Chicago to meet with Calzada Capital Partners as a part of the due diligence that was being conducted by W.S.I.B. Calzada Capital Partners prepared a pitch deck that was used to secure the initial funds from W.S.I.B. for the Plaza Fiesta project across various United States cities.

32.     On or around July 2015, RODRIGUEZ JR flew to Denver once again, to specifically meet with Calzada/W.S.I.B.'s representative, Mr. John Mankus, and Defendant McMurrain to discuss the company structure, partner compensation, entity roles, and the benefits package.

33.     Additionally, during this meeting, Defendant McMurrain, RODRIGUEZ JR, and Mr. Mankus walked potential sites for acquisition in the Denver Metro Area, including the old Denver Post Printing Headquarters.

34.     Due to Defendant McMurrain's bankruptcy history coming to light, Defendant McMurrain was disqualified from participating as a "partner," supplier, or contractor in any "partnership" with Simon Property Group as a part of the "energy Retrofit Projects" using PACE Financing on various properties throughout North America.

35.     Due to Defendant McMurrain's previous bankruptcy, Calzada/W.S.I.B. informed Defendant McMurrain that he would NOT be included in the "initial" new company structure and partner compensation plan, but would instead be given a "consulting agreement" for his efforts and contribution.

36.     RODRIGUEZ JR received the written formal offer from Calzada/W.S.I.B. to participate as an Employee/Partner in the development of multiple sites with the first $50M Term Sheet commitment.

37.     However, RODRIGUEZ JR did not agree to Defendant McMurrain's role being limited to a "Consultant" and informed Calzada/W.S.I.B. that he and Defendant McMurrain would not be accepting their term sheet offer of $50M due to the fact that Defendant McMurrain was not offered a partnership deal in the overall project/new entity.

38.     RODRIGUEZ JR officially joined Defendant McMurrain as a partner from June 2015 to August 2019. (what do you mean by this "by starting the entity" did he file it. This needs more detail look at the notes I know that Ben spoke in depth about the beginning of the relationship.   RODRIGUEZ JR duties included: (1) creating a bilingual marketing plan for prospective tenants; (2) creating a Family Enrichment Plan for community engagement; (3) creating a partnership with Aurora Public Schools to provide access to El Paseo Colorado partners in the community relating to care counseling, trauma support, career counseling, intern opportunities, mentorships, scholarships, and a business incubator within the marketplace; (4) all digital marketing including the production of project and carnival promo videos; (5) all social media marketing and management; (6) all company logos, branding, and positioning; (7) all planning and execution of local and national social media influencers; (8) planning and presentation for El Paseo Colorado Sponsorship Program; and (9) planning, marketing, and promotion for the El Paseo Colorado Carnivals.

39.     RODRIGUEZ JR was a part of the design team, designing the Family Entertainment Center.  In order to do so, RODRIGUEZ JR accompanied Defendant McMurrain to the largest International Amusement Conference in Orlando, Florida, four (4) years in a row, from

**COMPLAINT FOR DAMAGES**

2015 through 2018, to sample, price and pick out elements for this Project.  RODRIGUEZ JR and Defendant McMurrain sourced rides, games, software, POS, card systems, FEC consultants, new technology, FEC vendors, financing, designers and FEC training sources for the project

40.    RODRIGUEZ JR located and priced the architect/graphic designer, who would contract with Defendant C.C.D., to create the site plan, project layout and various renderings used to promote and pitch the project to the City of Aurora Planning Department, City Council, City Manager, Vasa Fitness, prospective equity investors, hard-money lenders, commercial project lenders, the press, and prospective tenants.

41.    On or around March 2014, RODRIGUEZ JR attended the Amusement Expo in Las Vegas to meet other F.E.C. operators and to learn about F.E.C. card system software.

42.    On or around June 2014, RODRIGUEZ JR led a team of three (3) people to produce and co-host with Univision Colorado Mexico World Cup Viewing Parties outside of Mile High Stadium in Denver.

43.    RODRIGUEZ JR researched the GeoFence and Camara Counter technology provided by companies, including Alexander Babagge, RetailNEXT, and presented them to Defendant McMurrain as part of the strategy to create effective marketing and customer engagement campaigns.

44.    RODRIGUEZ JR assisted Defendant McMurrain in the design of the Occupancy Cost Rent Model by introducing the P.O.S. vendors that would be interested in assisting El Paseo Colorado with a percentage rent software model for each of the merchants/vendors in the Project.

45.    RODRIGUEZ JR initiated relationships with various potential equity investors, including Mr. Danny Villanueva Jr, whose family were founders of Univision Network, who, in turn, introduced Mexican Billionaire, Alejandro Burillo Azcarraga, as a potential equity investor.

**COMPLAINT FOR DAMAGES**

46.     RODRIGUEZ JR also helped secure a meeting in Mexico City with Alejandro Marti, one of Mexico's most influential businessman, as a potential investor and developer, to pitch the Plaza Fiesta Colorado project.

47.     RODRIGUEZ JR initiated a relationship with one of Mexico's largest coffee shop chains, Cielito Querido Café, to discuss the possibility of bringing the business to America inside of El Paseo U.S.A. business model.

48.     RODRIGUEZ JR was also responsible for curating and contacting/pitching all of the food merchants, about twenty (20), for the "Culinary Journey" portion of the project, to make sure the food would help transport the patrons to Mexico and Latin America. RODRIGUEZ JR introduced Defendant McMurrain to the Eataly in Los Angeles as a way to convey an example of a Themed Grocerant Experience to the public

49.     RODRIGUEZ JR's introduced the Themed Grocerant Experience concept for Plaza Fiesta, which involved creating an Eataly-style concept for EL PASO COLORADO based on Mexican and Latin American cuisine from 9-10 countries. This would include cooking classes and demonstrations, various food stations in which to purchase items prepared fresh and in the store on a daily basis, and different restaurants showcasing cuisines from Mexico and Latin America. RODRIGUEZ JR was tasked by Defendant McMurrain to be in charge of the curation of tenants to support this concept and to differentiate the concept from other commercial projects ensuring the success and popularity of the commercial venture

50.     The purpose of the themed "grocerant" concept for Plaza Fiesta was to introduce Mexican and other Latin American cuisines to Hispanics and non-Hispanics alike. In Defendant McMurrain's previous location, he predominantly focused on creating a marketplace that would

cater to Spanish-speaking households with no "integrated" restaurant concept in the supermarket or marketplace. (check grammar and writing this doesn't read well)

51.     The concept is considered a "grocerant," which is considered part grocery store, part restaurant. RODRIGUEZ JR developed the marketing and design of the grocerant concept for Plaza Fiesta.

52.     RODRIGUEZ JR. introduced this concept to Defendant McMurrain by in October 2017 as a strategy to create a unique supermarket experience beyond the traditional Mexican or Hispanic market.  The purpose of this concept was attractive to HINES, who was interested in investing and co-developing the project as an Equity Partner when they listened to the presentations from RODRIGUEZ JR and Defendant McMurrain from November 2017 – December 2017.

53.     Defendant McMurrain did not envision this concept, nor did Defendant McMurrain implement this concept in his previous business. Defendant McMurrain's prior location only contained a traditional grocery store that was not integrated with the overall project, and it was not themed or staffed to welcome and engage with non-Hispanic customers.

54.     During one of the many trips RODRIGUEZ JR and Defendant McMurrain took during the developmental stage of the Businesses, RODRIGUEZ JR brought Defendant McMurrain to the Culinary Arts School of Tijuana to meet the director of the school, Mr. Javier Gonzalez. Mr. Gonzalez met with RODRIGUEZ JR to discuss a Hispanic talent development partnership that would include graduated chefs from the school, being sent to El Paseo Colorado to teach bilingual cooking classes.

55.     RODRIGUEZ JR also introduced Defendant McMurrain to the Mexican Wine Country in Baja California (Valle de Guadalupe), Mexico, to help Defendant McMurrain

**COMPLAINT FOR DAMAGES**

understand the new market opportunity for the United States.  Defendant McMurrain witnessed first-hand that this region includes a wine production and cuisine that is a part of something new in Mexico that is engaging to Hispanics and all millennials.

56.     RODRIGUEZ JR also took Defendant McMurrain to eat at the only restaurant in Baja California Norte, where the chef has a Michelin Star and was interested in discussing the development of a restaurant within El Paseo Colorado.

57.     Between 2015 and 2018, RODRIGUEZ JR and Defendant McMurrain attended the IAAPA Trade Show, a large amusement conference held on an annual basis. RODRIGUEZ JR and Defendant McMurrain attended this conference to meet with different manufacturers and distributors within the amusement industry. Each year, Defendant McMurrain registered RODRIGUEZ JR for the IAAPA Trade Show as Partners for Plaza Fiesta.

58.     The purpose of attending this conference for four years was to gain the required knowledge and connections to develop the family entertainment center that would be built out within Plaza Fiesta. RODRIGUEZ JR and Defendant McMurrain decided to install an entertainment area similar to Dave and Buster's style entertainment concept but more affordable and with more entertainment options for toddlers and younger aged children.

59.     On or around March 2018, RODRIGUEZ JR attended the F.E.C. Foundations 3-Day Conference and Seminar in Las Vegas, alongside Defendant McMurrain and his son, Douglas McMurrain.  At this conference, RODRIGUEZ JR and Defendant McMurrain were introduced to the Play System Vendor, UpTown Jungle, and their Chinese partner/manufacturer. This eventually led to a custom-designed play-system and ropes course area for El Paseo Colorado.

60.     On or around January 2018, RODRIGUEZ JR attended the C.E.S. Convention in Las Vegas to get ideas about the various Location Analytics Technology Firms.

**COMPLAINT FOR DAMAGES**

61.    Due to Defendant McMurrain's bankruptcy history, and inability to secure traditional lending, PLAINTIFFS, collectively, had to loan Defendant McMurrain money, either for both personal and business needs, which Defendant McMurrain has to this date not repaid.

62.    Defendant McMurrain's main source of income from 2015 – 2019 was as an UBER and hired driver, a driver for Vail Transportation Services, LLC, his shuttle company, and a seasonal Ski Instructor at Vail Resorts.

63.    From December 2016 – December 2017, SPC paid Defendant McMurrain a "Business Development Fee," once a Term Sheet was executed.  The fee was paid monthly in the amount of $3,000.00, plus $10,000.00 from previous loans or payments.  Defendant McMurrain used the funds to pay for the mortgage on his home, the same home that would eventually be used as collateral for a "hard-money" loan in October 2018.

64.    PLAINTIFFS were promised future projects and deals in exchange for their investments, development fees, and loans to Defendants.

65.    RODRIGUEZ JR has not received any compensation for his services to Defendants from February 2012 to August 2019, nor has he received his equitable interest in the Project as a partner in the entity.

66.    PLAINTIFFS was the primary line of consistent financing for the Businesses for investment, rent, project management, event promotions, transportation, and Defendant McMurrain's personal use throughout the period of December 2016 – October 2018.

67.    Defendant McMurrain relied on RODRIGUEZ JR and RODRIGUEZ SR 's expertise on the matter of construction to help secure project bids.  On September 22, 2015, Defendant McMurrain informed RODRIGUEZ JR that he and the Businesses "don't have any money budgeted for fancy facades, but hoped your dad, RODRIGUEZ SR, can do some magic.

14

68.     On May 3, 2018, Defendant McMurrain agreed to issue company stock to RODRIGUEZ SR in exchange for an investment in the amount of $10,000.00.  However, a total of $13,500.00 was wired because the May 2018 rent payment was also due.  PLAINTIFFS were offered shares in exchange for their financial contributions. However, PLAINTIFFS never received any certificate or information on the issued stocks.

69.     On May 29, 2018, Rob Salazar communicated his understanding of the concept of "El Paseo U.S.A.," referring to the entity "owned by Doug and Ben."

70.     On June 27, 2018, Defendant McMurrain received a check for $11,364.60, which he promised to send to RODRIGUEZ SR as payment toward RODRIGUEZ SR 's business loan, but Defendant McMurrain never sent the money.

71.     On June 29, 2018, SPC wired a business loan of $30,000.00, per the agreement, to Defendant P.F.D.

72.     On September 5, 2018, SPC agreed to loan Defendant E.P.C. $24,000.00, to be used toward September rent.

73.     On September 6, 2018, SPC wired the loan of $24,000.00 to Defendant P.F.D.

74.     All of the SPC Business loans were approved by RODRIGUEZ SR, who agreed to extend a Credit Line to Defendant P.F.D. in the amount of $75,000.00 with an interest rate of ten percent (10%) with a payback by October 1, 2018.

75.     In the end, $46,721.92 of the $75,000.00 was used for expenses and $24,000 for rent payment.  The $46,721.92 was used to pay for building improvements, new TVs, satellite TV equipment, public seating, lunch tables, synthetic turf, decorations, marketing, insurance, staffing, rental equipment, utilities, licensing fees, permit fees, beverage product to be sold and carnival promotions.  These funds were used between the period of June-August 2018.

76.     When the September rent was due, RODRIGUEZ SR wired $24,000.000 to cover the rent. This was sent alongside the funds generated from the August 2018 carnival event proceeds to pay for the rent.

77.     As of August 3, 2019, S.P.C. loaned Defendant P.F.D. a sum total of $70,721.00 plus interest.

78.     As of August 3, 2019, RODRIGUEZ SR's $13,500 investment is still owed the issuance of company stock.

79.     As of August 3, 2019, total investments or loans from S.P.C. and RODRIGUEZ SR to Defendant P.F.D. is $93,200.42.

80.     As of August 2019, the total expenses that PLAINTIFFS paid on behalf of Defendant E.P.C. is $46,721.92.

81.     Additionally, Defendant McMurrain was aware at all times that RODRIGUEZ JR was attending meetings on behalf of the entity. These meetings were held with the following companies and/or individuals on behalf of the Defendants: 1) the Culinary Arts School Director in Tijuana, Baja California, Mexico, 2) the LA Dodgers Spanish Radio Broadcaster for marketing plans with ballplayers, 3) the Los Angeles Spanish Radio DJ Nachingon regarding marketing special event, 4) Beatriz Acevedo who is the Founder of Mitu and Delta Airlines Advisory Board Member, 5) Mark Nichols CPA, regarding accounting software design and POS ideas for Occupancy Cost Model, 6) Jorge Gracia, Mexican Architecture School Director regarding the El Paseo Colorado and Finca Colorado design of the interior marketplace and exterior façades, 6) Lila Guizado, Architect and Designer regarding the project layout, interior renderings and exterior renderings and design for El Paseo Colorado, 7) Danny Villanueva Jr, potential Investor & Board Member regarding potential equity investors that could be targeted within the Latino Community

16

and Latin America, 8) Jesse Nuñez, former Director of Hispanic Marketing for the Los Angeles Dodgers to come up with sponsorship packages and positioning of El Paseo Colorado to be offered to potential Corporate Sponsors and Equity Investors, 9) Lily Guzman, local Denver Social Media Influencer who was approached by RODRIGUEZ JR as a part of his strategy to engage a local leader and community influencer to help promote the small-business vendor opportunity within El Paseo Colorado, 10) Jonathan Zilli, 11) Drew Deckman, 12) Tom Straw, 13) Abel Corral, 14) Don Daboub, 15) Rafael Santiago, 16) Christiano Cochrane, 17) Antonio Pagano, 18) Ron Rocha, 19) Francios Saber, 20) Francisco, 21) Bruno Navarrette, 22) Adrian Garcia, and  23) John Spahi.

82.     Defendant McMurrain presented RODRIGUEZ JR as a "founder," "member," or "partner" on various communications and introductions, showing that Defendant McMurrain intended to represent to the public that RODRIGUEZ JR was a partner.

    a.  On July 22, 2015, Defendant McMurrain introduced RODRIGUEZ JR as his "partner" in an email to the Mexican Consul General, Carlos J. Bello, in anticipation of a meeting in Denver.

    b.  On August 1, 2015, after pitching Danny Villanueva Jr the previous day in Denver, CO, Defendant McMurrain sent a PowerPoint pitch deck file he prepared and, in the presentation, referenced himself as an equal percentage partner and cofounder to RODRIGUEZ JR.

    c.  On September 5, 2015, Defendant McMurrain introduced Danny Villanueva JR and the 3-person team to Mary Rottler - Vice President of Leasing with Seritage Growth Properties and referenced the company as a "Minority-Owned Company" (Villanueva Jr 33.3% + RODRIGUEZ JR 33.3%).

**COMPLAINT FOR DAMAGES**

d.  On April 6, 2017, Defendant McMurrain sent an email to the building landlord (Lance Watkins) with a copy to RODRIGUEZ JR & prospective Equity Investment contact, Danny Woodbury, from The Woodbury Corporation.  In the email, Defendant McMurrain referenced RODRIGUEZ JR as his "partner" in recalling a previous meeting held in Salt Lake City in March 2017 with the Managing Partners of The Woodbury Corporation.  Mr. Watkins had also been approached as a potential co-development partner by proposing that he contribute the building toward the capital stack as an Equity Investor/Partner.

83.    Defendant McMurrain presented RODRIGUEZ JR to third parties as an authorized signatory for the companies, indicating a relationship existed between them as equal partners.

84.    From 2015 and 2018, Defendant McMurrain personally took RODRIGUEZ JR to the Wells Fargo branch in Edwards, CO, to be added to the PLAZA FIESTA DENVER bank account as a signer for the company.  RODRIGUEZ JR was issued a replacement bank debit account in 2018.  This is the same bank account that RODRIGUEZ SR was asked to wire his investment and business loan transactions in 2018.

85.    Defendants have benefitted from RODRIGUEZ JR 's performance, and he is owed compensation.  In addition to compensation, RODRIGUEZ JR is owed stock options equal to a percentage in the Project (real estate, Vasa lease, and El Paseo Colorado project).

86.    Defendant McMurrain used the SPC Development Fee, cash investments, and business loans raised by RODRIGUEZ JR to make sure his personal home and building did not go into default due to lack of mortgage and/or rent payments due from 2016-2018.

87.    The VASA LEASE was permitted to be finalized, which provided the project with the necessary credit tenant and guaranteed income that would be used to secure a Hard-Money

Loan and Commercial Financing for the purchase of the asset with Tenant Improvement dollars in April 2019.

88.     Defendant McMurrain also benefited by receiving over $130,000.00 in cash deposits from Crabtree Amusements as a result of hosting a total of four (4) carnival events from 2018-2019.  This carnival operator was located and brought to the project by RODRIGUEZ JR as a contribution to help pay for rent and other project expenses.

89.     Defendant McMurrain has since then closed this Wells Fargo bank account in an attempt to no longer have these cash deposits as a reference.

90.     Defendant McMurrain also used the entire Marketing & Sales Plan that RODRIGUEZ JR had prepared to start in 2014 and continued through 2020.  The Marketing & Sales plan included the recruiting of local business leaders and a bilingual sales staff that was brought to the project from March 2018-June 2019 that would be hired by Defendant McMurrain to help operate a sales center with the purpose of selling pre-leasing opportunities to prospective merchants and food vendors who were allowed to reserve their spot in the upcoming marketplace with a deposit payment equal to one (1) month's rent.

91.     The pre-leasing campaign started in March 2018 with a social media and video marketing campaign 100% produced by RODRIGUEZ JR and continues through 2020.  Defendant McMurrain benefitted in 2019 by this online & offline pre-leasing campaign by receiving check deposits from new merchants and food vendors in excess of $150,000 that he was able to show his commercial lender as the collateral necessary to trigger the "Phase 2" portion of the construction financing needed for the 2020-2021 work to be completed for the 90,000 square foot portion of the EL PASEO COLORADO/LA PLAZA COLORADO marketplace.

COMPLAINT FOR DAMAGES

92.     RODRIGUEZ SR is owed repayment plus interest on the several loans he made to Defendants.   In addition, RODRIGUEZ SR is owed stock options equal to a percentage in the Project (real estate, Vasa lease, and El Paseo Colorado project) and a project development fee settlement.

93.     SPC was to receive the contract for the remodel, restoration, or buildout of the projects related to Defendants P.F.D., E.P.C., and P.F.C., in exchange for their project development fee, investment, and loans, but never did.

## FIRST CAUSE OF ACTION
### NEGLIGENCE
(Against All Defendants)

94.     PLAINTIFFS realleges and incorporates by reference each and every factual allegation contained in the proceeding paragraphs as though fully set forth herein.

95.     Defendants, and each of them, owed PLAINTIFFS a duty of care.  Defendants, and each of them, were negligent in allowing PLAINTIFFS' investment funds to be lost or misused as investors in the companies.

96.     Defendants, and each of them, were negligent in failing to compensate RODRIGUEZ JR for his performance to the companies.

97.     Defendant McMurrain numerous times discussed the partnership having over $1M in annual cash flow to pay back equity investors and then have as a part of the partnership split.

98.     As a way to motivate RODRIGUEZ JR, Defendant McMurrain shared that from experience, these types of deals will net $50,000.00 - $60,000.00 in monthly salary.

99.     Due to Defendant McMurrain's bankruptcy history, he was unable to secure any loans or have any cash flow, relying on PLAINTIFFS to contribute funds, important business relationships, and sweat equity to the projects and companies.

100.    Defendant McMurrain used PLAINTIFFS' project development fee to help pay for the payment of his personal mortgage.

101.    Based on the negligence of the Defendants, and each of them, PLAINTIFFS were harmed. The ongoing harm includes, but is not limited to, the loss of their investments of money and over eight (8) years' worth of service.

102.    The negligence of Defendants, and each of them, remains a substantial factor in causing PLAINTIFFS' ongoing harm.

## SECOND CAUSE OF ACTION
CONCEALMENT
(Against Defendant McMurrain)

103.    PLAINTIFFS realleges and incorporates by reference each and every factual allegation contained in the proceeding paragraphs as though fully set forth herein.

104.    Defendant McMurrain and RODRIGUEZ JR were business partners, and Defendant McMurrain intentionally failed to disclose specific facts to RODRIGUEZ JR regarding the business operations and his intended use of the investments.

105.    Defendant McMurrain had a duty to disclose all facts to RODRIGUEZ JR. Still, Defendant McMurrain deliberately and intentionally failed to disclose the fact that he never intended to distribute any ownership or equity interest to RODRIGUEZ JR as a partner in the Businesses.

106.    Defendant McMurrain never intended to repay any of the investment made to the companies as loans, which were obtained by RODRIGUEZ JR.

107.    Defendant McMurrain never intended to honor any investment agreements that he signed with the PLAINTIFFS.

21

108.    Defendant McMurrain never intended to give SPC any of the projects involving the Businesses, although he explicitly stated he would provide SPC future projects and deals.

109.    Despite these duties to RODRIGUEZ JR, Defendant McMurrain continuously and intentionally misrepresented the true nature of the business relationship.

110.    Furthermore, Defendant McMurrain deliberately concealed material facts regarding RODRIGUEZ JR 's position as partners and the investment that PLAINTIFFS contributed to the Businesses.

111.    Defendant McMurrain, at every opportunity, intentionally made it difficult for RODRIGUEZ JR to discover any information regarding Defendant McMurrain's intentions to prevent RODRIGUEZ JR from becoming a partner or repay any of the investments or loans RODRIGUEZ JR had secured for him and the Businesses.

112.    PLAINTIFFS never had any chance to obtain any information relating to Defendant McMurrain's concealment of material facts.

113.    PLAINTIFFS were harmed, and are subject to ongoing harm, due to Defendant McMurrain's gross and reckless misconduct.

114.    Defendant McMurrain's concealment was a substantial factor in causing PLAINTIFFS' damages.

### THIRD CAUSE OF ACTION
BREACH OF THE IMPLIED COVENANT OF GOOD FAITH AND FAIR DEALING
(Against Defendant McMurrain)

115.    PLAINTIFFS realleges and incorporates by reference each and every factual allegation contained in the proceeding paragraphs as though fully set forth herein.

116.    California law implies a covenant of good faith and fair dealing in all contracts between parties entered into in the State of California.

22

117.    Defendant McMurrain and RODRIGUEZ JR entered into an oral and written contract, including emails and money received, whereby RODRIGUEZ JR and Defendant McMurrain agreed to associate as co-owners with the intent to carry on a business for profit.

118.    Defendant McMurrain and RODRIGUEZ JR formed and operated the Businesses.

119.    Defendant McMurrain needed PLAINTIFFS to launch the Businesses, submit pitch decks to potential investors, vendors, and sponsor/partners, and entered into a partnership with RODRIGUEZ JR.

120.    RODRIGUEZ JR secured investments as required of him.

121.    Defendant McMurrain did not secure any special event revenue opportunities to the "K-mart" location from November 2017-June 2019, where RODRIGUEZ JR secured three (3) carnivals to come to the location in 2018, and a fourth carnival to come to the location in May of 2019.

122.    The income generated from the events was in excess of $125,000 in cash deposits and helped pay rent toward the location and cover expenses.

123.    Defendant McMurrain and RODRIGUEZ JR worked as a team to co-host a Farmers Market that lasted from March 2018 – May 2018.  This brought in little-to-no revenue, and this is why RODRIGUEZ JR was proactive in locating the carnival operator to quickly bring an event to the empty and available site.

124.    Additionally, RODRIGUEZ JR and his marketing team produced bilingual marketing videos and launched a website and social media pages to promote all of the carnival events in 2018 and 2019.

125.    RODRIGUEZ JR answered all of the comments and requests from the public regarding each of the events and marketplace vendor opportunities as the sole customer service

23

representative.   Defendant McMurrain did not contribute any time or effort to these marketing and customer service efforts as this was not his role in the partnership.

126.   Due to the location being located on a heavily trafficked area of Aurora with a desirable amount of residential density population of 135,000 and over 44,000 households within a walking and 3-mile radius.

127.   Defendant McMurrain continued to receive offers to rent the location on two (2) fifteen years leases.  The offers included purchasing the out parcels in the parking lot, and an offer from "David, Hicks, Lampert & Brokerage," representing their client, VASA Fitness.  Defendant McMurrain did not pay or compensate RODRIGUEZ JR for his contribution in securing opportunities for the locations.

128.   Defendant McMurrain breached the covenant of good faith and fair dealing governing every contract with PLAINTIFFS by failing to repay the loans he contracted, the financial investment, and the time and sweat investment of RODRIGUEZ JR.

129.   Defendant McMurrain breached the covenant of good faith and fair dealing by failing to contract SPC for the remodel, restoration, or buildout of projects related to Defendant P.F.D., E.P.C., and P.F.C., in exchange for their project development fee, investment, and loans.

130.   Defendant McMurrain's misconduct has harmed and continues to harm PLAINTIFFS.

**FOURTH CAUSE OF ACTION**
UNFAIR BUSINESS PRACTICES
[BUSINESS AND PROFESSIONS CODE § 17200, *et seq*]
(Against Defendant McMurrain)

131.   PLAINTIFFS realleges and incorporates by reference each and every factual allegation contained in the proceeding paragraphs as though fully set forth herein.

24

132.    Business and Professions Code, Section 17200 states, in pertinent part: "…unfair competition shall mean and include any unlawful, unfair or fraudulent business act or practice and unfair, deceptive, untrue or misleading advertising and any act prohibited by Chapter 1 (commencing with Section 17500 of Part 3 of Division 7 of the Business and Professions Code."

133.    At all times mentioned herein, Defendant McMurrain engaged in "unfair" business practices because its conduct was immoral, unethical, oppressive, unscrupulous, and substantially damaging to PLAINTIFFS.

134.    Defendant McMurrain presented him and RODRIGUEZ JR to the public as a founder of the Businesses.

135.    Defendant McMurrain presented him and RODRIGUEZ JR to the public as co-owners of the Businesses.

136.    Defendant McMurrain presented him and RODRIGUEZ JR to the public as partners of the Businesses.

137.    Defendant McMurrain presented RODRIGUEZ JR to the public as a "member" of the Businesses.

138.    Defendant McMurrain accepted a loan from PLAINTIFFS without any intention of repaying the investment secured by or directly contributed from PLAINTIFFS.

139.    Defendant McMurrain accepted investment from PLAINTIFFS without any intention of executing the documents required to issue shares in the Businesses for the investments.

140.    Defendant McMurrain accepted an investment of time and services from PLAINTIFFS without any intention of compensating PLAINTIFFS for their services, including any and all tasks involving translating the materials into Spanish, project fundraising, curating the

thematic culinary marketplace, travels, and planning of the Family Entertainment Center, planning and executing a project marketing plan targeted at prospective investors and/or merchants and food vendors.

141.   PLAINTIFFS continue to contribute all bilingual online marketing, including all social media channels, video marketing production, and customer service by communicating with interested English/Spanish speaking vendors and creating materials for Spanish speaking audiences.

142.   At all times mentioned herein, Defendant McMurrain engaged in "fraudulent" business practices because members of the public are likely to be deceived as a result of the conduct alleged herein.

143.   As a direct and proximate result of Defendant McMurrain's wrongful acts, PLAINTIFFS suffered harm and losses as described herein and in amounts to be proved at trial. PLAINTIFFS, therefore, seek restitution from Defendants.

### FIFTH CAUSE OF ACTION
BREACH OF CONTRACT
(Against All Defendants)

144.   PLAINTIFFS realleges and incorporates by reference each and every factual allegation contained in the proceeding paragraphs as though fully set forth herein.

145.   RODRIGUEZ JR entered into a contract with Defendant McMurrain.

146.   RODRIGUEZ JR secured funding for the Businesses.

147.   Defendant McMurrain entered into a partnership with RODRIGUEZ JR, in which both parties had an ownership interest in the properties leased or owned for the Business and all subsequent income and revenue generated from the operation of the Businesses. On June 27, 2018, Defendant McMurrain received a check for $11,364.60, which he promised to send to

**COMPLAINT FOR DAMAGES**

RODRIGUEZ SR as payment toward RODRIGUEZ SR 's loans. However, Defendant McMurrain never had any intention of repaying loans and withheld this information from PLAINTIFFS.

148. On September 5, 2018, SPC agreed to loan to Defendant E.P.C. $24,000.00 to be used toward September 2018 rent.

149. On September 6, 2018, SPC wired the loan of $24,000.00 to Defendant P.F.D.

150. RODRIGUEZ SR agreed to fund Defendant P.F.D. of $75,000.00 with an interest rate of ten percent (10%) with a payback by October 1, 2018.

151. As of August 3, 2019, SPC loaned to Defendant P.F.D., a total principal of $70,721.00 plus interest.

152. As of August 3, 2019, RODRIGUEZ SR invested $13,500.00 in exchange for shares in the company.

153. As of August 3, 2019, total investment from SPC and RODRIGUEZ SR to Defendant P.F.D. is $93,200.42.

154. As of August 2019, total expenses that PLAINTIFFS paid on behalf of Defendant E.P.C. is $46,721.92

155. By transferring the agreed-upon funds, RODRIGUEZ JR did all, or substantially all, of the important matters that the contracts required him to do.

156. RODRIGUEZ JR suffered damages because he was never fully compensated for the work he contributed to the company, and Defendants are liable for an amount to be determined at trial.

/ / /

/ / /

/ / /

/ / /

**COMPLAINT FOR DAMAGES**

## **SIXTH CAUSE OF ACTION**
### INTENTIONAL MISREPRESENTATION
(Against All Defendants)

157.   PLAINTIFFS realleges and incorporates by reference each and every factual allegation contained in the proceeding paragraphs as though fully set forth herein.

158.   On May 3, 2018, Defendant McMurrain agreed to issue shares in the Businesses to RODRIGUEZ SR in exchange for $13,5,000.00.

159.   As of the filing date of this Complaint, RODRIGUEZ SR has not been issued any shares in the Businesses by Defendant McMurrain.

160.   On September 22, 2019, Defendant McMurrain communicated to PLAINTIFFS in an email that he had no intention of honoring the previously signed investment memorandums with RODRIGUEZ SR.

161.   On May 24, 2018, Defendant McMurrain represented to a third party that RODRIGUEZ JR and Defendant McMurrain were co-owners of Defendant P.F.C.

162.   On June 27, 2018, Defendant McMurrain received a check for $11,364.60, which he promised to send to RODRIGUEZ SR as payment toward RODRIGUEZ SR 's loan. However, Defendant McMurrain never sent the amount as promised to RODRIGUEZ SR.

163.   On June 29, 2018, SPC wired the loan of $30,000.00, per the agreement, to Defendant P.F.D.

164.   As of August 3, 2019, SPC loaned to Defendant P.F.D., a total principal of $70,721.00 plus interest.  The outstanding debt is now $76,662,92.

165.   As of August 3, 2019, RODRIGUEZ SR invested $13,500.00 in exchange for shares in the company.

**COMPLAINT FOR DAMAGES**

166.   As of August 3, 2019, total investment from SPC and RODRIGUEZ SR to Defendant P.F.D. is $93,200.42.

167.   As of August 2019, the total expenses that PLAINTIFFS paid on behalf of Defendant E.P.C. is $46,721.92.

168.   Defendant McMurrain continues to deny the existence of the partnership, and therefore all of the representation of a partnership was misrepresented.

169.   Defendant McMurrain refuses to repay the investments and loans, and therefore all of the representation of the intent for the loans to be paid back was misrepresented.

170.   Due to Defendant McMurrain's intentional misrepresentation, Defendants are liable to PLAINTIFFS in an amount to be determined at trial.

## SEVENTH CAUSE OF ACTION
### NEGLIGENT MISREPRESENTATION
(Against All Defendants)

171.   PLAINTIFFS realleges and incorporates by reference each and every factual allegation contained in the proceeding paragraphs as though fully set forth herein.

172.   On May 3, 2018, Defendant McMurrain agreed to issue company stock to RODRIGUEZ SR in exchange for $13,500.00.

173.   As of the filing date of this Complaint, RODRIGUEZ SR has not been issued any shares in the Businesses.

174.   On May 24, 2018, Defendant McMurrain represented to a third-party that RODRIGUEZ JR and Defendant were owners of Defendant P.F.C.

175.   On June 21, 2018, Defendant McMurrain referred to RODRIGUEZ JR and Defendant McMurrain as a team of "us," demonstrating the relationship as partners in the Businesses.

29

176. On June 27, 2018, Defendant McMurrain received a check for $11,364.60, which Defendant McMurrain promised to send to RODRIGUEZ SR as payment toward RODRIGUEZ SR 's loan, but Defendant McMurrain never did.

177. Defendant McMurrain intended for RODRIGUEZ JR to believe RODRIGUEZ JR was co-owner in the Businesses, which encouraged RODRIGUEZ JR to obtain more financing for the Business.

178. RODRIGUEZ JR obtained investment from his father, RODRIGUEZ SR, and loans from SPC and his wife, Mayra Rodriguez, in order to give the Businesses the capital necessary to pay rent, expand its capabilities so that the lease from VASA FITNESS could be signed with a corporate-secured commitment for two (2) 15-year terms.

179. Defendant McMurrain now denies the partnership, and therefore all of the representation of a partnership was misrepresented.

180. Defendant McMurrain refuses to repay the investments and loans, and therefore all of the representation of the intent for the loans to be paid back was misrepresented.

181. Although Defendant McMurrain may have initially believed or intended that the representations were accurate, he had no reasonable grounds for believing the representation was accurate at the time he made the statements.

182. Defendant McMurrain intended that the PLAINTIFFS rely on his representations.

183. PLAINTIFFS reasonably relied on said representations, which was a substantial factor in causing the harm described herein.

184. Due to Defendant McMurrain's negligent misrepresentations, Defendants are liable to PLAINTIFFS in an amount to be determined at trial.

### EIGHTH CAUSE OF ACTION
UNJUST ENRICHMENT
(Against All Defendants)

185.    PLAINTIFFS realleges and incorporates by reference each and every factual allegation contained in the proceeding paragraphs as though fully set forth herein.

186.    RODRIGUEZ JR worked for or with Defendant McMurrain from February 2012 through August 2019.

187.    RODRIGUEZ JR was attending meetings with nonprofits, vendors, suppliers, potential investors, marketing partners, potential sponsors, project prospective merchants and food vendors, sales team candidates, and food & beverage consultants, on behalf of Defendant McMurrain and the Businesses.

188.    RODRIGUEZ JR was authorized by Defendant McMurrain to negotiate and enter into contracts, without limitations, on behalf of the Businesses.

189.    RODRIGUEZ JR also provided managerial input on proposals to Defendants.

190.    Defendants have benefited from all of RODRIGUEZ JR 's actions during the period without any compensation.

191.    Defendants have benefited from RODRIGUEZ SR's investments and SPC business loans, without repaying the loans.

192.    Defendant McMurrain has personally benefited from PLAINTIFFS investment of project design, transportation, time, intellectual property, branding and marketing, sales team recruitment, authentic food vendor curating, and the online/offline merchant/vendor sales plan development.

193.    Without having to repay all PLAINTIFFS work, Defendants are unjustly enriched from their investment and work.

**COMPLAINT FOR DAMAGES**

## **NINTH CAUSE OF ACTION**
RELIANCE
(Against All Defendants)

194.    PLAINTIFFS realleges and incorporates by reference each and every factual allegation contained in the proceeding paragraphs as though fully set forth herein.

195.    RODRIGUEZ JR was promised to be a partner of the Businesses.

196.    RODRIGUEZ JR was promised fifty percent (50%) interest of the Businesses.

197.    In reliance, RODRIGUEZ JR sat in meetings with investors, negotiated a favorable contract, and spent the time to provide managerial input on proposals.

198.    RODRIGUEZ SR was promised shares from Defendant McMurrain, and in reliance on the promise of issued shares, RODRIGUEZ SR exchanged $13,500.00 for them.

199.    From 2016 – 2017, SPC provided McMurrain with a Project Development Fee equal to $46,000.00, relying on Defendant McMurrain promised contracts to be awarded to SPC upon funding of the necessary equity and commercial financing for the Project.

200.    From January 2014 through August 2019, RODRIGUEZ JR agreed to join Capital City Development as a partner when he relocated to Denver for the Plaza Fiesta Denver Project.

201.    Defendant McMurrain promised that in exchange for the project development fee, loans and investments, PLAINTIFFS would be the construction firm on all the projects.

202.    As of the date of filing this Complaint, Defendant McMurrain has not repaid any of the investments or loans as promised.

203.    It was foreseeable that PLAINTIFFS would rely on those promises and PLAINTIFFS actually and reasonably relied on those promises.

204.    PLAINTIFFS relied on the promises and continues to suffer ongoing harm.

32

205.    All Defendants have benefitted from their false promises at the expense of PLAINTIFFS. PLAINTIFFS continue to suffer injustice due to the Defendants' refusal to enforce their obligations.

**TENTH CAUSE OF ACTION**
FALSE PROMISES
(Against Defendant McMurrain)

206.    PLAINTIFFS realleges and incorporates by reference each and every factual allegation contained in the proceeding paragraphs as though fully set forth herein.

207.    RODRIGUEZ JR agreed to join the Businesses as a partner and would take a reduction in his salary in exchange for an equity interest in the company and continued to perform his duty from February 2012 through August 2019.

208.    RODRIGUEZ SR paid $13,500.00 in exchange for shares in the company, which were never issued to RODRIGUEZ SR as of the filing of this Complaint.

209.    RODRIGUEZ SR loaned Defendant McMurrain $37,000.00 plus interest, which Defendant McMurrain had not repaid.

210.    Defendant McMurrain received a check for $11,364.60, which he promised to send to RODRIGUEZ SR as payment toward RODRIGUEZ SR 's loan, but Defendant McMurrain never sent the amount promised.

211.    S.P.C. wired the loan of $30,000.00 to Defendant P.F.D., which Defendant McMurrain refuses to repay as of the filing of this Complaint.

212.    S.P.C. wired the loan of $24,000.00 to Defendant P.F.D., which Defendant McMurrain refuses to repay as of the filing of this Complaint.

**COMPLAINT FOR DAMAGES**

213.   S.P.C. loaned to Defendant P.F.D., a total principal of $70,721.00 plus interest. The outstanding debt is now $76,662,92, which Defendant P.F.D. did not intend to pay back the loans.

214.   As of August 3, 2019, RODRIGUEZ SR invested $13,500.00 in exchange for shares in the company, which Defendant McMurrain has not issued as of the filing of this Complaint.

215.   Defendant McMurrain intended to make those promises to defraud PLAINTIFFS out of their investment.

216.   Defendants intended PLAINTIFFS to rely on those promises.

217.   PLAINTIFFS relied on the oral promise and continues to suffer damages as a result of the Defendants' actions.

## ELEVENTH CAUSE OF ACTION
### QUANTUM MERIT
(Against All Defendants)

218.   PLAINTIFFS realleges and incorporates by reference each and every factual allegation contained in the proceeding paragraphs as though fully set forth herein.

219.   To recover on a claim for the reasonable value of services under a *quantum merit* theory, a plaintiff must establish that (1) the defendant requested plaintiff perform services for the benefit of the defendant; (2) the plaintiff performed the services as requested; (3) that defendant has not paid for the services; and (4) the reasonable value of the services that were provided.

220.   RODRIGUEZ JR agreed to join the company as a partner and would take a reduction in his salary in exchange for an equity interest in the company and continued to perform his duty from February 2012 through August 2019.

221.   RODRIGUEZ JR obtained investments for the Businesses as required.

34

222.   Between 2012 and 2019, RODRIGUEZ JR was attended between over 300 meetings with various investors, merchants, vendors, sponsors, restaurants, partners, clients, suppliers, stores, conventions, on behalf of Defendant McMurrain and himself.

223.   Commencing in 2012, RODRIGUEZ JR was looking for and driving by potential project sites throughout Southern California and collaborating with Defendant McMurrain to prepare/submit drafts of letters of intent for leases and/r purchases.

224.   RODRIGUEZ JR relocated twice, once in April 2014, and once in October 2015, to Colorado for the project.   RODRIGUEZ JR was helped and accompanied by Defendant McMurrain himself on the second relocation.

225.   In 2012, RODRIGUEZ JR helped Defendant McMurrain by preparing Presentation Decks for Capital City Development and Vail Energy Development.   He also introduced Defendant McMurrain to Energy Efficiency clients, professionals, and manufacturers that helped Defendant McMurrain as he learned about Energy Efficiency strategies for retail real estate and PACE Financing.

226.   RODRIGUEZ JR negotiated on contracts and signed on the Businesses' behalf.

227.   RODRIGUEZ JR provided managerial input on project designs, FEC elements, food vendor curating, bilingual branding & marketing campaigns, project positioning, community partnerships/engagement, company staffing/recruits, and project construction budgeting/proposals.

228.   Defendant McMurrain constantly alluded to RODRIGUEZ JR 's ownership interest, and he refused to execute any documents issuing RODRIGUEZ JR fifty percent (50%) ownership interest in the company.

229.   RODRIGUEZ JR suffered damages because he was not compensated nor issued his ownership interest in the company.

**COMPLAINT FOR DAMAGES**

**PRAYER FOR RELIEF**

WHEREFORE, PLAINTIFFS pray for judgment against Defendants, and each of them, as follows:

1.  For general and special damages in a sum according to proof;

2.  For interest as provided by law;

3.  For punitive damages allowed by law;

4.  For attorney fees;

5.  For the costs of suit herein;

6.  For an award of prejudgment and post-judgment interest; and

7.  For such and other relief as the Court deems proper.


DATED:  August 17, 2020                Respectfully Submitted,

                                       **MCDONALD WORLEY**


                              By:      ___*/s/ Jeffrey C. Bogert*_____
                                       Jeffrey C. Bogert, Esq.
                                       Attorney for Plaintiffs,
                                       B.J.M.V. INC., d/b/a SPC BUILDING SERVICES;
                                       BENJAMIN J. RODRIGUEZ, BENJAMIN V.
                                       RODRIGUEZ

**COMPLAINT FOR DAMAGES**

## DEMAND FOR JURY TRIAL

Pursuant to *Federal Rule of Civil Procedure* 38, Plaintiffs hereby demand a trial by jury in the above-captioned Action of all issues triable by jury.

DATED:  August 17, 2020                    Respectfully Submitted,

                                           **MCDONALD WORLEY**


                              By:     ___*/s/ Jeffrey C. Bogert*_____
                                      Jeffrey C. Bogert, Esq.
                                      Attorneys for Plaintiffs.
                                      B.J.M.V. INC., d/b/a SPC BUILDING SERVICES;
                                      BENJAMIN J. RODRIGUEZ, BENJAMIN V.
                                      RODRIGUEZ.

**COMPLAINT FOR DAMAGES**